**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **EP-11-CR-3021-KC** |
| | § | |
| **ISIDRO GARZA, JR. AND MARTHA** | § | |
| **CATALINA GONZALEZ GARZA.** | § | |

**<u>ORDER</u>**

On this day, the Court considered the government's claims for restitution from

Defendants Isidro Garza ("Isidro") and Martha Catalina Gonzalez Garza ("Martha") (collectively

"Defendants").  For the reasons set forth below, the Court **DENIES** the government's claims for

restitution as to both Isidro and Martha.

**I.      BACKGROUND**

This case has a long history.  For the purposes of this Order, though, a brief synopsis of

the case will suffice.  The Kickapoo Traditional Tribe of Texas (the "Tribe") hired Isidro to

manage the Tribe's casino, the Lucky Eagle Casino ("Lucky Eagle Casino").  *United States v.*

*Garza*, 593 F.3d 385, 387 (5th Cir. 2010).  The Tribe also placed Isidro's wife, Martha, and their

son, co-defendant Timoteo Garza ("Timoteo") on the payroll.  *Id.*  On December 9, 2004, the

government charged Isidro, Martha, and Timoteo with various offenses relating to the

misappropriation of tribal funds and tax evasion.  *Id.* at 387-88; Indictment, ECF No. 8.  The

government alleged that Isidro improperly used the Tribe's money for personal expenditures.

*Garza*, 593 F.3d at 386-87.

The judicial proceedings in this case began in the Del Rio Division of the Western District of Texas. *Garza*, 593 F.3d at 387. In May of 2006, the case was *sua sponte* transferred to the Waco Division of the Western District of Texas. *Id.*

In October of 2007, a jury returned verdicts against all three defendants. *Id.* at 388. The jury convicted Isidro and Timoteo of multiple counts of conspiracy to commit the offenses of theft from an Indian tribal organization, in violation of 18 U.S.C. § 371, and theft by officers or employees of gaming establishments on Indian lands, in violation of 18 U.S.C. § 1168. Verdict Form ¶¶ 1, 4, 7-8, 10-11, ECF No. 609. Additionally, the jury convicted all three defendants of conspiracy to evade the payment of taxes in violation of 18 U.S.C. § 371. Verdict Form ¶ 12. And finally, the jury convicted Isidro and Martha of four counts of tax evasion in violation of 26 U.S.C. § 7201. Verdict Form ¶¶ 13, 14a, 15a, 16. Defendants appealed their convictions in February 2008. Notice of Appeal 1, ECF No. 652; Corrected Notice of Appeal to the United States Ct. of Appeals for the Fifth Circuit 1, ECF No. 676.

In January 2010, the Fifth Circuit vacated the convictions and remanded the case for a new trial because the *sua sponte* transfer of venue violated Rule 18 of the Federal Rules of Criminal Procedure. *Garza*, 593 F.3d at 391. Upon remand to the district court in Del Rio, the presiding judge recused herself. The case was then subsequently assigned to this Court.

On March 14, 2012, Isidro pleaded guilty to two counts pursuant to a plea agreement. Minute Entry 1, ECF No. 971; Plea Agreement 1, 7-8, ECF No. 955. First, Isidro pleaded guilty to Count 1: violating 18 U.S.C. § 371 by conspiring to commit theft by officers and employees from gaming establishments on Indian land as prohibited by 18 U.S.C. § 1168. Minute Entry 1; Plea Agreement 7-8. Additionally, Isidro pleaded guilty to Count Twenty-One: violating 18

2

U.S.C. § 371 by conspiring to impede, impair, obstruct and defeat the Internal Revenue Service's collection of income taxes.  Minute Entry 1; Plea Agreement 8.

That same day, Martha pleaded guilty to Count Twenty-five of the Superseding Indictment which charged her with tax evasion in violation of 26 U.S.C. § 7201, pursuant to a plea agreement.  Minute Entry ("Minute Entry for Martha") 1, ECF No. 972; Plea Agreement ("Martha's Plea Agreement") 1, 7, ECF No. 956.  Specifically, Martha admitted that the government had evidence beyond a reasonable doubt that she and Isidro filed a false income tax return for the year 2002.  Martha's Plea Agreement 7.  Unlike Isidro, Martha did not plead guilty to a conspiracy crime.  *See id.* at 1, 7.

In the plea agreements, the government, Isidro, and Martha agreed to have the Court determine the amount of restitution.  Plea Agreement 5-6; Martha's Plea Agreement 5.  At the hearing regarding the pleas, the parties initially wished to argue the issue of restitution. However, after a few minutes of argument it was clear that neither the government, nor the United State's Probation Office ("Probation"), nor Defendants were sufficiently prepared to address the issues of restitution.  Accordingly, the Court ordered the parties to submit their arguments and evidence on paper.

On April 13, 2012, the government submitted a memorandum arguing that Isidro should pay $2,356,660.62 in restitution to the Tribe, and $566,473.00 in restitution to the United States for tax losses.[1]  Government's Submission in Supp. of Restitution and Tax Loss Amounts" ("Government's Memorandum") 9, ECF No. 981.  The nine page document included three

---

[1] At the plea hearing, the government stated that it would only seek $500,000 in restitution from Isidro because that was the amount that Honorable Walter S. Smith, Jr. ordered at sentencing in 2008 after the guilty verdict.  However, it appears the government has changed its position since the plea hearing.

exhibits.  The first is a chart that adds up the amounts that government alleges that Isidro misapplied by spending the Lucky Eagle Casino and Tribe's money without authorization. Govt.'s Mem. Ex. A ("Chart A"), ECF No. 981-1.  Chart A also includes citations to trial exhibits that the government submitted on a DVD.  *See id.*  The second chart is an alternative calculation omitting certain political expenditures.  Govt.'s Mem. Ex. B ("Chart B"), ECF No. 981-2.  And the third chart provides cryptic calculations regarding Isidro's federal taxes.  Govt.'s Mem. Ex. C ("Chart C"), ECF No. 981-3.

On April 18, 2012, Isidro filed a response that largely focused on the presentence report that Probation had prepared in this case.  Def. Isidro Garza's Resp. to Government's Submission in Supp. of Restitution and Tax Loss Amounts ("Isidro's Response") 4-13, ECF No. 982. Probation had originally created a presentence report in 2008 after the jury convicted Isidro on several counts.  After the Fifth Circuit overturned the conviction and Isidro signed a plea agreement, Probation submitted a revised report.  Presentence Investigative Report ("PSR") ¶¶ 10, 129-30, ECF No. 969.  In the PSR, Probation contends that Isidro should pay the Tribe $1,605,460.36, and the United States $493,319.47.  PSR ¶¶ 129-30.  In his Response, Isidro argued that the PSR lacked a factual basis and Probation made calculation errors.  *See* Isidro's Resp. 8-12.

The government replied and explained that it was not relying on the PSR, but instead was relying on its own submissions.  Government's Reply to Def.'s Resp. to Government's Submission in Supp. of Restitution and Tax Loss Amounts 1 ("Government's Reply"), ECF No. 985.

On April 25, 2012, the Court considered these submissions and the law governing restitution and became concerned that the submissions were insufficient. *See* Order 1-4, ECF No. 986. Although the government provided charts of the alleged losses and some documentary evidence, the government failed to explain who created the documents, how the documents were relevant, or why the documents were created in the first place. *See* Govt.'s Mem. 2-4; Chart A; Trial Exs. 374-79. Further, and more troubling, the government did not provide any legal analysis explaining how the evidence met the legal requirements for an order of restitution. *See* Govt.'s Mem. 2-4; Chart A; Trial Exs. 374-79. Accordingly, the Court ordered the government to "submit a brief on or before May 2, 2012, explaining, and providing additional evidence if necessary, how each alleged loss in the government's [Charts] A, B, and C, fits the legal requirements [for restitution]." Order 4. Additionally, the Court ordered Isidro to respond by May 9, 2012. *Id.* The Court also provided that the government could file a reply by May 14, 2012, if it wished to do so. *Id.*

On May 2, 2012, the government submitted a six-page brief and ignored the Court's Order that the government explain how each alleged loss fits the legal requirements for restitution. *See* Government's Supplemental Submission in Supp. of Restitution and Tax Loss ("Government's Supplemental Memorandum") 1-5, ECF No. 987. Instead of following the Order, the government stated that "numerous witness at trial" established Isidro's misapplications of Lucky Eagle Casino money and then provided the following citation: "*E.g.* Juan Garza, Rolando Benevides, Mario Diaz and Cindy Salazar." *Id.* at 3 & n.5. Beyond not providing specific citations to their testimony, the government did not even supply the transcripts

5

of these witnesses.[2]  And despite the government's statement that "hard evidence in this case, both documentary and testimonial, clearly establishes" the appropriateness of restitution, the government did not include any additional evidence beyond their original submissions that the Court explicitly warned were inadequate.  *See id.* at 6.

Isidro responded on May 8, 2012, by arguing that the government failed to follow the Court's Order.  Def. Isidro Garza's Resp. to Government's Supplemental Submission in Supp. of Restitution and Tax Loss ("Isidro's Supplemental Response") 2, ECF No. 990.  Isidro argued that "the government has failed to explain how [the convicted] conduct caused the alleged losses in government's exhibits A, B, and C and has failed to show the actual loss incurred by each alleged victim."  *Id.* at 2.  The government did not file a reply.

In regard to Martha, neither the government nor Martha has filed any submissions regarding restitution despite having ample opportunity to do so.  However, Probation submitted a presentence report that contends Martha should be liable for $493,319.47 in restitution to the United States for taxes because Martha and Isidro filed their taxes jointly.  *See* Presentence Investigation Report ("PSR for Martha") ¶¶ 35-38, ECF No. 968.

## II.   DISCUSSION

The government seeks restitution from both Isidro and Martha.  After examining the general principles of restitution, the Court examines the case against Isidro and then the case against Martha.

---

[2]      Perhaps the government expected the Court to remember the testimony of Juan Garza, Rolando Benevides, Mario Diaz and Cindy Salazar.  However, those witnesses testified at trial in Waco, and not before this Court.  Further, the trial was in 2007 — more than four years ago.

Under the Mandatory Victims Restitution Act ("MVRA"), sentencing courts must order restitution to victims of "an offense against property under [Title 18]."  18 U.S.C. § 3663A(c)(1)(A)(ii); *United States v. Espinoza*, --- F.3d ----, 2012 WL 1292513, at *1 (5th Cir. 2012).  The statute defines a victim as a "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."  18 U.S.C. § 3663A(a)(2). If the offense involves a conspiracy, then a victim is "any person directly harmed by the defendant's criminal conduct in the course of the . . . conspiracy."  *Id.*  Although the statue says person, the victim can be a non-person such as a government or company.  *See* 18 U.S.C. § 3664(i); *Espinoza*, 2012 WL 1292513, at *2; *see also* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.").

To recover restitution, the government must prove by a preponderance of the evidence (1) an actual loss incurred by each victim that (2) was caused by the convicted conduct.  *See* 18 U.S.C. §§ 3664(e), 3664(f)(1)(a); *United States v. Beydoun*, 469 F.3d 102, 107-08 (5th Cir. 2006).  "Because the purpose of the MVRA is to compensate a victim for its losses," the government must prove the victim's actual losses, and the court "may not award the victim a windfall."  *Beydoun*, 469 F.3d at 107-08; *see also United States v. Shepard*, 269 F.3d 884, 887-88 (7th Cir. 2001) (holding that the district court must subtract the amount of money the defendants returned to the victim via home improvements because that would equal the actual loss).  In addition to proving actual losses, the government must show that the actual losses were caused by the convicted conduct.  *See Espinoza*, 2012 WL 1292513, at *1-2; *United States v.*

7

*Arledge*, 553 F.3d 881, 898-99 (5th Cir. 2008); *United States v. Adams*, 363 F.3d 363, 366 (5th Cir. 2004)).

When a defendant pleads guilty, the indictment, the plea agreement, and the plea colloquy generally define the scope of the convicted conduct. *See Adams*, 363 F.3d at 366-67; *see also Hughey v. United States*, 495 U.S. 411, 418 (1990) (holding that the statutory language authorizes courts to compensate only those victims harmed as a result of the convicted offense). Courts look beyond just the indictment because the scope of the convicted conduct "is defined by the parties themselves" through plea negotiations. *Adams*, 363 F.3d at 367; *see Hughey*, 495 U.S. at 421 ("The essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses.").

### A.     Isidro's Restitution

In its Memorandum, the government seeks from Isidro $2,356,660.62 in restitution for the Tribe, and $566,473 in restitution for the United States. Govt.'s Mem. 9. In contrast, Probation suggests Isidro should pay the Tribe $1,605,460.36, and the United States $493,319.47. PSR ¶¶ 129-30. Isidro argues that the Court should not order any restitution. Isidro's Supplemental Resp. ¶¶ 2-4.

As stated above, Isidro pleaded guilty to Count One: conspiring to commit theft by officers and employees from gaming establishments on Indian land, in violation of 18 U.S.C. § 371. Minute Entry 1; Plea Agreement 7-8. Additionally, Isidro pleaded guilty to Count Twenty-One: conspiring to impede, impair, obstruct and defeat the Internal Revenue Service's collection of income taxes, in violation of 18 U.S.C. § 371. Minute Entry 1; Plea Agreement 8. The

MVRA applies to both of these counts because the convictions were under Title 18 and the conspiracies were against the property of the Lucky Eagle Casino and the property of the United States. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii); *United States v. Powell*, 354 F.3d 362, 366 n.1 (5th Cir. 2003); *United States v. Quarrell*, 310 F.3d 664, 677-78 (10th Cir. 2002); *see also United States v. Minneman*, 143 F.3d 274, 284 (7th Cir. 1998) (holding restitution appropriate under 18 U.S.C. § 3663, which has the same "under this title" requirement, where jury convicted the defendant of a conspiracy under 18 U.S.C. § 371 to impede the Internal Revenue Service); *United States v. Hirmer*, 767 F. Supp. 2d 1305, 1309 & n.10 (N.D. Fla. 2011) (applying MVRA to a conviction for conspiring to defraud the Internal Revenue Service).  Accordingly, the question here is whether the government has proven by a preponderance of the evidence that (1) an actual loss incurred by the Tribe and the United States (2) was caused by the convicted conduct. *See* 18 U.S.C. §§ 3664(e), 3664(f)(1)(a); *Beydoun*, 469 F.3d at 107-08.

The Court first examines the restitution allegedly owed to the Tribe, and then restitution allegedly owed to the United States for taxes.

### 1.      Restitution to the Tribe

Both the government and Probation contend that Isidro should pay restitution to the Tribe. *See* Govt.'s Mem. 9; PSR ¶ 129.  However, the two provide different evidence and come to different conclusions. *See* Govt.'s Mem. 9; PSR ¶ 129.  Therefore, the Court first examines the government's submissions and then Probation's submissions.

9

### a.      Government's submissions

The government's theory of restitution for the Tribe is fairly simple.  The government argues that restitution is proper because Isidro pleaded guilty to conspiring to commit theft by officers and employees from gaming establishments on Indian land, in violation of 18 U.S.C. § 371.  Govt.'s Mem. 3-4; Govt.'s Supplemental Mem. 3.  As part of this conspiracy, the government argues that Isidro misapplied the Lucky Eagle Casino and the Tribe's money.  Govt.'s Supplemental Mem. 3.  Specifically, the government claims that Defendant Isidro misappropriated Lucky Eagle Casino and the Tribe's money by (1) spending Lucky Eagle Casino money on his campaign for the United States House of Representatives, (2) keeping a portion of the proceeds of a loan to the Tribe from Lehigh Municipal Leasing Inc. (the "Lehigh Loan") for himself and his attorney, (3) directing payments from the Tribe to a corporation nominally owned by Isidro's sons, (4) spending Tribal money on his campaign for the United States House of Representatives, (5) using Lucky Eagle Casino funds to pay for a stay at the La Quinta Inn while his house was being remodeled, (6) spending Lucky Eagle Casino money on a birthday party for his wife, (7) spending Lucky Eagle Casino money for his son's campaign for the Texas House of Representatives, (8) directing wire transfers from the Tribe to a corporation nominally owned by Isidro's sons, (9) making various other "miscellaneous expenditures" that were related to Isidro's run for the House of Representatives, (10) giving cash to Raul Garza, the chairman of the Tribe's council, (11) spending Lucky Eagle Casino money to benefit Raul Garza, (12) directing the purchase of personal furniture from Mexico for Raul Garza, (13) directing the purchase of other personal furniture for Raul Garza, (14) directing that money from the Lehigh Loan go to an

escrow account to the Tribe's attorney, (15) directing that payday loans were given to employees

who would renounce their signature on a recall petition and express support for Raul Garza, and

(16) directing that Lucky Eagle Casino make donations to politicians, religious organizations,

and others.[3]  Chart A; Govt.'s Mem. 4-8.

As detailed below, all of these alleged losses suffer from two main defects that preclude a

finding in favor of the government.  The government's theory is that every expenditure of the

Tribe's money requires a written resolution of the Tribe's governing council.  *See* Govt.'s

Supplemental Mem. 3.  The government supports this analysis by pointing to the Tribe's

constitution that states: "The Treasurer . . . shall make disbursements of funds only in accordance

with properly executed resolutions of the Tribal Council."  *See id.* at 2-3 & n.1; Govt.'s Trial

Mem. Regarding Tribal Governance and Revenue Restrictions Ex. 2, Art. IV § 3, ECF No. 434-

---

[3]    The Court notes that items 2, 3, 4, 8, and some of the expenditures in item 9 were allegedly misapplications of the Tribe's money, not the Lucky Eagle Casino's money.  *See* Chart A; Govt.'s Mem. 5-7.  In addition to the problems described below, these expenditures cannot be recovered as restitution because they are outside the scope of the convicted conduct.  The law is clear that courts cannot order restitution for losses caused by conduct that is beyond the scope of the convicted conduct.  *See United States v. Espinoza*, --- F.3d ----, 2012 WL 1292513, at *2-3 (5th Cir. 2012) (holding that defendant could not be ordered to pay restitution to a pawn shop owner that had to return a stolen gun that the defendant allegedly sold him because the defendant was convicted of possession of a firearm, not stealing or illegally transferring firearms); *United States v. Upton*, 91 F.3d 677, 686 (5th Cir. 1996) (holding that restitution could not be awarded for losses that were not part of the conspiracy scheme).

In this case, Isidro pleaded guilty to conspiring to commit theft from gaming establishments, and the underlying crime of the conspiracy was theft from a gaming establishment.  Plea Agreement 7; 18 U.S.C. § 1168.  Thus, the scope of the convicted conduct was a conspiracy to commit thefts from gaming establishments.  The alleged thefts from the Tribe in items 2, 3, 4, 8, and some of the expenditures in item 9 on Chart A, are beyond the scope of the convicted conduct because the government never suggests that those items were thefts from a gaming establishment.  Therefore, the Court cannot award restitution for these losses.

1.  Thus, according to the government, all the expenditures listed in Chart A and listed above are misapplications because there are no corresponding resolutions of the Tribe.  *See* Govt.'s Supplemental Mem. 3.

The problem with this argument is that the government has presented no evidence proving that there were no resolutions for these items.  Without that evidence, the government cannot show that these were misapplications and thus cannot prove by a preponderance of the evidence that the convicted conduct caused the losses.  After all, if these were properly authorized expenditures, then there was no loss.

To take one example, the government contends that the Tribe is entitled to restitution for the $154,573.23 of Lucky Eagle Casino funds that Isidro allegedly spent on his campaign for the United States House of Representatives.  Govt.'s Mem. 5; Chart A.  As evidence, the government presents the Lucky Eagle Casino's American Express credit card statements and what appear to be accounting documents from the Lucky Eagle Casino.  Chart A (citing Trial Exs. 14, 17).  The first problem with this evidence is that the government does not identify which of the many expenditures were improper campaign expenditures.  The government submitted over one-thousand pages of American Express statements, but provides no evidence or explanation to identify the relevant charges.  *See* Trial Ex. 14.  The accounting documents are equally unhelpful. In eighteen pages, there is no mention of a political campaign, and there is no way to infer from general statements like "meals and entertainment" or "equipment" that these were campaign expenses.  *See* Trial Ex. 17.  In sum, the Court cannot determine based on this evidence whether

these are misapplications or just routine costs incurred in the course of running a casino business, and thus not losses caused by the convicted conduct.

Second, and more critically, none of this evidence shows that the expenditures were unauthorized. If the Tribe authorized these expenditures, then they were not misapplications, and thus not losses caused by the convicted conduct. Submitting a collection of financial documents that purport to show a loss is plainly insufficient for an award of restitution. *See United States v. Menza*, 137 F.3d 533, 539 (7th Cir. 1998) ("[T]he government must provide the district court with more than just the general invoices submitted by the [alleged victims], ostensibly identifying the amount of their losses. The government must provide sufficient explanations (supported by evidence reflected in the record) as to how these invoiced losses directly relate to [the defendant's] criminal conduct involved in his underlying convictions.").

Ironically, the government recognized it has the burden to show that these expenditures were misapplications in its Supplemental Memorandum. *See* Govt.'s Supplemental Mem. 3. The government states openly that the misapplications were "established by numerous witnesses at trial." *Id.* at 3; *see also* Govt.'s Mem. 4 (noting "[i]t is significant that there were never any resolutions of the Traditional Council authorizing Defendant to make contributions and donations from the casino's operating account"). But the government did not present that evidence to the Court. *See* Govt.'s Supplemental Mem. 3 n.5.

In its Supplemental Memorandum, the government attempts to save its case for restitution by arguing that the loss to the Tribe "was caused by the Defendant's willful misapplications, the conduct charged in Count One to which he pleaded guilty." *See id.* at 2. This argument fails

because Isidro did not plead guilty to committing willful misapplications; he pleaded guilty to

"conspiring to commit theft from gaming establishments."  Plea Agreement 7.  It is black letter

law that conspiring to commit theft does not necessarily mean that a theft actually occurred.

*United States v. Feola*, 420 U.S. 671, 694 (1975) (noting that the law of conspiracy as embodied

in 18 U.S.C. § 371 "identifies the agreement to engage in a criminal venture as an event of

sufficient threat to social order to permit the imposition of criminal sanctions for the agreement

alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is

committed").  In other words, just because Isidro admits via his plea that he conspired to commit

theft, that does not necessarily mean that someone actually committed theft by spending Lucky

Eagle Casino money without authorization, thus causing an actual loss.

Moreover, neither the Superseding Indictment nor the Plea Agreement include admissions

or evidence that all of these expenditures lacked authorization, and thus were misapplications.

*See* Plea Agreement 7-8; Superseding Indictment 4-11, ECF No. 946-1.  The closest statement to

an admission is Isidro's statement in his Plea Agreement that he "misapplied and falsely

expensed in the Kickapoo Lucky Eagle Casino books and records as 'legal fees' and 'casino

advertising'" between September 9, 2001 and August 21, 2002.  Plea Agreement 8.  But the

government fails to connect this admission to specific expenditures that were falsely expensed as

legal fees or casino advertising.  The Court does not know if these misapplications involved huge

expenditures or just a couple of entries for a few dollars.  And this cannot possibly cover

restitution sought for the years 1998, 1999, 2000, most of 2001, and some of 2002 because,

according to the plea agreement, Isidro's admission only covers the period from September 9, 2001 to August 21, 2002.

In addition to failing to present sufficient evidence that the expenditures listed on Chart A were misapplications, there is a second fatal flaw in the government's case for restitution.  The government admits that the Tribe authorized Isidro to receive 10% of the Lucky Eagle Casino's adjusted net income as his compensation ("Profit Based Compensation").  Govt.'s Mem. 2. Accordingly, the government maintains that money given to Isidro or spent for the benefit of Isidro was not misapplied unless the amount exceeded Isidro's Profit Based Compensation.  *See id.*  Only amounts above Isidro's Profit Based Compensation were misapplications.  *See id.* at 2-3.  Therefore, determining the adjusted net income of the Lucky Eagle Casino and Isidro's Profit Based Compensation is critical to determining whether a given expenditure was part of Isidro's Profit Based Compensation or was a misapplication.

The problem here is that the government provides insufficient evidence to substantiate the adjusted net income of the Lucky Eagle Casino, and thus the proper amount of Isidro's Profit Based Compensation.  The evidence largely consists of seventy-four pages of unexplained financial documents each titled "Calculation of Distribution to Kickapoo Traditional Tribe."  *See generally* Trial Exs. 374-78.  Although the government never explains the source of these documents or what they represent, they appear to be a monthly accounting of the adjusted net income of the Lucky Eagle Casino.  *See id.*

The Court attempted to reconcile these monthly adjusted net incomes with the yearly adjusted net income numbers the government provided on Chart A.[4]  However, the Court was unsuccessful for several reasons.  First, there are numerous months missing.  *See, e.g.*, Trial Exs. 376-77 (missing the months of February, May, June, and September for the year 2002).  Second, there are several months that have two statements with differing amounts of adjusted net income.  For example, there are two documents labeled for the period ending August 1, 1999.  *Compare* Trial Ex. 374, at 12 *with* Trial Ex. 374, at 13.  One document states that the adjusted net income for the period ending on August 1, 1999 was $183,823.33.  Trial Ex. 374, at 12.  The other document states the adjusted net income for that same period was $229,055.33.  Trial Ex. 374, at 13.[5]  Perhaps there is a good reason for these multiple statements, but the government has provided no explanation.  And without that explanation, the Court does know which one is accurate.  Third, the Court attempted to reasonably account for the omissions and errors, but could not reconcile the monthly adjusted net income with the yearly adjusted net income numbers on Chart A.  In sum, the evidence the government provided does not support the government's calculations for Isidro's Profit Based Compensation.

---

[4]    Technically, Chart A does not include the yearly adjusted net income numbers, but rather the government's calculations of Isidro's Profit Based Compensation.  However, the two numbers are correlated because Isidro's Profit Based Compensation was 10% of the Lucky Eagle Casino's adjusted net income.  By multiplying the government's calculations of Isidro's Profit Based Compensation by ten, the Court can calculate what the government contends were the Lucky Eagle Casino's yearly adjusted net income.

[5]    To assist the reader in finding citations to the government's exhibit that do not include page numbers, the Court references the page numbers that the PDF document generates.

In addition to the monthly adjusted net income documents, the government provided three spreadsheets that appear to show the annual net income for the Lucky Eagle Casino. *See* Trial Ex. 379. Once again, the government failed to provide evidence or explanation to give these spreadsheets some context — the Court does not know who made these spreadsheets, when these spreadsheets were made, why these spreadsheets were made, or whether these spreadsheets are reliable. Beyond the lack of context, these spreadsheets further call into question the government's calculations of Isidro's Profit Based Compensation because these numbers do not match either the government's allegations in Chart A or the monthly adjusted net income statements in Trial Exhibits 374 through 378. *Compare* Trial Ex. 379 *with* Chart A *and* Trial Exs. 374-78. Indeed, the amount of Isidro's Profit Based Compensation varies in one year by almost two hundred thousand dollars. *Compare* Trial Ex. 379, at 2 (suggesting $4,061,024 as the Lucky Eagle Casino's adjusted net income and thus Isidro's 10% would be $406,102.40) *with* Chart A (alleging that Isidro's 10% was $243,323.60, thus suggesting the Lucky Eagle Casino's adjusted net income was only $2,433,236).

The Court recognizes that the MVRA allows for estimates. *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008); *United States v. Ahidley*, 486 F.3d 1184, 1189 (10th Cir. 2007); *United States v. Vaknin*, 112 F.3d 579, 587 (1st Cir. 1997), *abrogated on other grounds by United States v. Anonymous Defendant*, 629 F.3d 68 (1st Cir. 2010). But the government would need to substantiate the estimates with evidence. *See Vaknin*, 112 F.3d at 587 (citing *United States v. Neal*, 36 F.3d 1190, 1200-01 (1st Cir. 1994)) ("An award cannot be woven solely from the gossamer strands of speculation and surmise."); 18 U.S.C. §§ 3664(e) ("Any

dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence.").  Here, the government provides specific numbers but without sufficient evidence to justify the numbers.  There is no suggestion that these are estimates, nor does the government provide evidence to support an estimate.

The government's failure to provide sufficient evidence to justify Isidro's Profit Based Compensation undermines its entire case for restitution.  As stated above, the government's theory is that money given to Isidro or spent for the benefit of Isidro was not misapplied as long as the amounts did not exceed Isidro's Profit Based Compensation — specifically, 10% of the Lucky Eagle Casino's adjusted net income.  Because the Court cannot even discern an approximate amount that represents Isidro's Profit Based Compensation, the Court cannot determine what expenditures were above his Profit Based Compensation, and thus misapplications.  And because the Court cannot determine what expenditures were misapplied, the Court cannot determine by a preponderance of the evidence that Isidro's convicted conduct caused these losses.

In sum, the evidence provided by the government is a collection of incomplete and unexplained financial statements that do not appear to support the government's assertions.  This is plainly insufficient for an award of restitution.  *See Menza*, 137 F.3d at 539.

### b.      Probation's submissions

Similarly, Probation's PSR fails to provide sufficient evidence of an actual loss caused by Isidro's conduct.  "Generally, [a presentence report] bears sufficient indicia of reliability to permit the sentencing court to rely on it" for restitution.  *See United States v. Ollison*, 555 F.3d

152, 164 (5th Cir. 2009) (quoting *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995)).  But

to award restitution, the court must be persuaded by a preponderance of the evidence that the

defendant's convicted conduct caused the actual loss.  *See* 18 U.S.C. § 3664(e); *Espinoza*, 2012

WL 1292513, at *2-3; *Beydoun*, 469 F.3d at 107.

Here, the PSR lacks reliability and does not show an actual loss caused by the convicted

conduct.  The PSR presents no evidence or explanation to justify Probation's conclusion that the

Tribe suffered an actual loss of $1,605,460.36.  The Court thoroughly reviewed the PSR and

could not determine how Probation arrived at the figure of $1,605,460.36.  The Court was

sufficiently concerned about the lack of evidence and lack of explanation that the Court requested

Probation submit a memorandum explaining how Probation determined the loss amount.  In its

Sealed Memorandum, Probation explains that it relied on charts the government submitted to

Probation in 2008.  *See* Sealed Mem. 2, ECF No. 992.[6]  Probation attached those charts to the

Sealed Memorandum, but the charts do not support Probation's calculations — the charts add up

to a loss of $1,640,868.02, not Probation's figure of $1,605,460.36.  *See id.* at 3.  Moreover, the

charts contain no evidence to justify these numbers.  *See id.*  In sum, the PSR and the Sealed

Memorandum explaining the PSR are insufficient for an award of restitution because they do not

bear a "sufficient indicia of reliability."  *See Ollison*, 555 F.3d at 164 (quoting *Ayala*, 47 F.3d at

690).

---

[6]      To assist the reader in finding citations when the document does not include
page or paragraph numbers, the Court references the page numbers that the
CM/ECF docketing system generated.

In addition to the PSR and the Sealed Memorandum, Probation submitted to the Court hundreds of pages of documents from its investigation.  Sealed Supplemental 2 Attach., ECF No. 995; Sealed Supplemental 3 Attach., ECF No. 996; Sealed Supplemental 4 Attach., ECF No. 997; Sealed Supplemental 5 Attach., ECF No. 998; Sealed Supplemental 6 Attach., ECF No. 999; Sealed Supplemental 7 Attach., ECF No. 1000.  Many of those documents are poignant statements by Tribe members discussing how Isidro caused harm to the tribe.  *See, e.g.*, Sealed Supplemental 2 Attach. 4-5, 63.  But there is little to no evidence in these documents to justify Probation's loss amount, and certainly not enough to meet the preponderance of the evidence standard imposed by the MVRA.

### c.      Summary

In conclusion, neither the government nor probation have presented sufficient evidence to show by a preponderance of the evidence that the Tribe suffered an actual loss caused by Isidro's convicted conduct.  Therefore, the Court cannot award restitution to the Tribe despite the harm that Isidro caused to the Tribe and its members.  After all, Isidro has admitted to conspiring to steal from the Tribe's Lucky Eagle Casino and there is evidence that Isidro's actions hurt members of the Tribe.  *See* Plea Agreement 8; Sealed Supplemental 2 Attach. 4-5, 63.  But the MVRA is clear that the Court can only award restitution if the government proves by a preponderance of the evidence an actual loss caused by the convicted conduct.  *See* 18 U.S.C. § 3664(e); *Espinoza*, 2012 WL 1292513, at *2-3; *Beydoun*, 469 F.3d at 107.  And as explained above, the Court gave both the government and Probation the opportunity to supplement their original submissions after the Court explicitly told them that the original submissions were

20

insufficient.  Neither seized that opportunity, and thus, the Court has no choice but to deny restitution to the Tribe.

**2.      Restitution to the United States for taxes**

Although the government and Probation both contend that Isidro should pay restitution to the United States for underpayment of taxes, the two differ in the amount.  *See* Govt.'s Mem. 9; PSR ¶ 130.  Therefore, the Court first examines the government's submissions and then Probation's submissions.

**a.      Government's submissions**

The government argues that Isidro should be ordered to pay the United States $566,473 for tax losses.  Govt.'s Mem. 8-9.  The government calculates that number based upon the government's calculations of Isidro's Profit Based Compensation plus several of the expenditures listed above that the government argues were misapplications.  Govt.'s Mem. 8-9; Chart A. Specifically, the government maintains that the following expenditures should count as income to Isidro: (1) spending Lucky Eagle Casino money on his campaign for the United States House of Representatives, (2) keeping a portion of the proceeds of the Lehigh Loan for himself and his attorney, (3) directing payments from the Tribe to a corporation nominally owned by Isidro's sons, (4) spending Tribal money on his campaign for the United States House of Representatives, (5) using Lucky Eagle Casino funds to pay for a stay at the La Quinta Inn while his house was being remodeled, (6) spending Lucky Eagle Casino money on a birthday party for his wife, (7) spending Lucky Eagle Casino money for his son's campaign for the Texas House of Representatives, (8) directing wire transfers from the Tribe to a corporation nominally owned by

21

Isidro's sons, (9) making various other "miscellaneous expenditures" that were related to Isidro's run for the House of Representatives.  *See* Chart A; Chart C.

To obtain restitution for tax losses, the government must prove by a preponderance of evidence that the defendant caused the United States to suffer an actual loss.  *See United States v. Ellefsen*, 655 F.3d 769, 782 (8th Cir. 2011); *Hirmer*, 767 F. Supp. 2d at 1311-14.  The actual loss would be the revenue loss to the United States — in other words, the amount the defendant should have paid in taxes to the United States.  *See Ellefsen*, 655 F.3d at 782; *Hirmer*, 767 F. Supp. 2d at 1311-14.  Given that the loss is the tax liability of the defendant, determining the amount of restitution requires consideration of the applicable deductions, exemptions, penalties, and others intricacies of the tax code.  *See Ellefsen*, 655 F.3d at 782 (noting that the government presented a "detailed explanation of the amount of taxes, penalties, interest, and additional payments, for each year," and used the testimony and reports of IRS agents to establish the amount of restitution).

Isidro pleaded guilty to conspiring to impede, impair, obstruct and defeat the Internal Revenue Service's collection of income taxes, in violation of 18 U.S.C. § 371.  Minute Entry 1; Plea Agreement 8.  According to the Superseding Indictment, Isidro failed to file any tax returns for the years 1997, 2000, and 2001, and omitted significant amounts of income in 1998 and 2002.  Superseding Indictment 21.

The problem with the government's case for restitution is that the government fails to explain or present evidence on how it calculated these alleged tax losses.  *Compare Ellefsen*, 655 F.3d at 782 (noting that the government presented a "detailed explanation of the amount of taxes,

penalties, interest, and additional payments, for each year," and used the testimony and reports of IRS agents to establish the amount of restitution) *with* Chart C *and* Government's Mem. 8-9. The government did provide Chart C — a one page spreadsheet that appears to calculate Isidro's tax liability.  But the government failed to explain any of the calculations.  The government does not explain the applicable tax bracket, the exemptions, or the deductions.  *See* Government's Mem. 8-9; Chart C.  This is plainly insufficient.  *See Hirmer*, 767 F. Supp. 2d at 1311-14 & n.27 (denying restitution for tax losses because the government failed to calculate the defendant's tax liability according to the applicable tax laws, and thus the actual loss to the Internal Revenue Service).

According to the government, the "supporting exhibits were prepared . . . based on underlying exhibits and testimony."  Govt.'s Reply 4.  But the government did not provide those exhibits or testimony.  Rather, the government simply assures the Court that it took a conservative approach.  *See* Govt.'s Supplemental Mem. 5 n.8; *see also* Govt.'s Reply 4 ("[I]n each instance of computing the tax loss, all benefit is given to the taxpayers for criminal prosecution purposes").  But the MVRA requires a preponderance of the evidence, not just assurances.  *See* 18 U.S.C. § 3664(e).  And by not revealing how the government calculated the tax loss, Isidro cannot easily respond with his own calculations and competing evidence. Likewise, the Court cannot verify the government's mathematical calculations or ensure that the law supports the government's calculations.  In sum, the government's submissions do not show by a preponderance of the evidence that Isidro caused an actual loss of $566,473 to the United States.

23

### b.    Probation's submissions

The PSR provides even less information than the government's submissions.  Probation concludes that Isidro owes $493,319.47 in restitution to the United States for taxes.  PSR ¶¶ 59-60.  However, the PSR does not indicate what evidence Probation used to calculate that number, or even the mathematical calculations.  The Court was sufficiently concerned about the lack of evidence or explanation that the Court requested Probation submit a memorandum explaining how Probation determined the loss amount.  Probation explained it relied on the government's charts.  Sealed Mem. 2.  But the charts the government provided to Probation in 2008 appear to show tax losses of over a million dollars, not Probation's calculation of $493,319.47 in restitution.  *See id.* at 2, 6-7.  Moreover, the charts do not cite to evidence to justify these numbers.  *See id.*  In sum, Probation has not submitted sufficient information for the Court to award restitution to the United States.

### c.    Summary

Not awarding restitution to the United States troubles the Court because Isidro has admitted to conspiring to impede the Internal Revenue Service's collection of income taxes and to filing a false income tax return in 2002.  Plea Agreement 8.  However, the MVRA is clear that the Court can only award restitution if the government proves by a preponderance of the evidence an actual loss caused by the convicted conduct.  *See* 18 U.S.C. § 3664(e); *Espinoza*, 2012 WL 1292513, at *2-3; *Beydoun*, 469 F.3d at 107.  And despite the Courts efforts to afford Probation and the government the opportunity to supplement their original submissions, neither has

24

submitted sufficient information.  Accordingly, the Court has no choice but to deny restitution to the United States.

### B.        Martha's Restitution

In regard to Martha, neither the government nor Martha has filed any submissions regarding restitution despite having ample opportunity to do so.  On the other hand, Probation contends that pursuant to 18 U.S.C. § 3663, Martha should be liable for the same $493,319.47 in restitution to the United States for taxes because Martha and Isidro filed their taxes jointly.  *See* PSR for Martha ¶¶ 35-38, 93.

Martha pleaded guilty to Count Twenty-Five of the Superseding Indictment which charged her with tax evasion in violation of 26 U.S.C. § 7201.  Minute Entry for Martha 1; Martha's Plea Agreement 1, 7.  Specifically, Martha admitted that the government had evidence beyond a reasonable doubt that she and Isidro filed a false income tax return for the year 2002.  Martha's Plea Agreement 7.  Unlike Isidro, Martha did not plead guilty to a conspiracy crime under Title 18.  *See id.* at 1, 7.

As a preliminary matter, Probation is incorrect that 18 U.S.C. § 3663 allows for restitution in Martha's case.  Neither of the two restitution statutes, 18 U.S.C. § 3663 nor 18 U.S.C. § 3663A, provides for restitution for convictions under 26 U.S.C. § 7201.[7]  *United States*

---

[7]        A court can award restitution pursuant to 18 U.S.C. § 3663(a)(3) "to the extent agreed to by the parties in a plea agreement."  18 U.S.C. § 3663(a)(3); *United States v. Hassebrock*, 663 F.3d 906, 923 n.4 (7th Cir. 2011).  That section does not apply here because the government and Martha have not agreed to restitution, but rather left that decision to the Court.  *See* Martha's Plea Agreement 5; *United States v. Anderson*, 545 F.3d 1072, 1078-79 & n.7 (D.C. Cir. 2008) (focusing on the parties intent to decide whether the court can impose restitution pursuant to 18 U.S.C. § 3663(a)(3)).  And even if 18 U.S.C. § 3663(a)(3) were to apply, as explained below, there is insufficient evidence of a

*v. Nolen*, 523 F.3d 331, 332-33 (5th Cir. 2008); *United States v. Hassebrock*, 663 F.3d 906, 923-25 (7th Cir. 2011).

However, the Court may order Martha to pay restitution as a condition of probation or as a condition of supervised release.[8]  *See* 18 U.S.C. §§ 3563(b)(2), 3583(d); *Nolen*, 523 F.3d at 333; *see also Hassebrock*, 663 F.3d at 925 (7th Cir. 2011) ("For Title 26 offenses, a district court is only authorized to impose restitution as a condition of probation or as a condition of supervised release.").  And although such an order would not be issued pursuant to the MVRA, the requirements of the MVRA still apply.  *See Nolen*, 523 F.3d at 333; *United States v. Maturin*, 488 F.3d 657, 660 n.1 (5th Cir. 2007); *see also* United States Sentencing Guidelines ("U.S.S.G.") § 5E1.1(a)(2) ("In the case of an identifiable victim, the court shall . . . impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) *but otherwise meets the criteria for an order of restitution under that section*." (emphasis added)).  Accordingly, the Court can only order restitution as a condition of supervised release or probation if a preponderance of the evidence shows an actual loss caused by the convicted conduct.  *See Maturin*, 488 F.3d 657, 660 n.1; U.S.S.G. § 5E1.1(a)(2); *Beydoun*, 469 F.3d at 107.

---

loss caused by the convicted conduct for the Court to determine an amount of restitution.

[8]     Because the order is a condition of probation or supervised release, the order only applies during the period of probation or supervised release.  *See Hassebrock*, 663 F.3d at 925.

In this case, the requirements for restitution have not been met.  In the PSR for Martha, Probation contends that Martha should be liable for $493,319.47 based on taxes allegedly owed to the United States for the years 1996, 1997, 1998, 2000, 2001, and 2002.  PSR for Marth ¶¶ 35-38.  But Martha only pleaded guilty to filing a false income tax return for the year 2002.  Minute Entry for Martha 1; Martha's Plea Agreement 1, 7.  Thus, by definition, her convicted conduct cannot have caused tax losses for the years 1996, 1997, 1998, 2000, and 2001.  *See Weinberger v. United States*, 268 F.3d 346, 357-58 (6th Cir. 2001) (holding that restitution order was erroneous because the court awarded restitution for the years 1990 through 1994, when the defendant only pleaded guilty to tax evasion in violation of 26 U.S.C. § 7201 for the 1993 tax year); *Espinoza,* 2012 WL 1292513, at *1 (quoting *Maturin*, 488 F.3d at 660-61 and citing *United States v. Mancillas*, 172 F.3d 341, 343 (5th Cir. 1999)) ("'[A] district court can award restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted.'")*.*  Therefore, Probation's amount of  $493,319.47 cannot be supported because the MVRA only allows restitution for losses caused by the convicted conduct.

Moreover, the PSR for Martha suffers from the same problems as the PSR for Isidro.  First, the PSR for Martha never explains how Probation calculated the tax liability.  *See* PSR for Martha ¶¶ 36-38.  Second, the PSR for Martha does not cite to any substantiating evidence.  *See id.*  Given these two problems, the Court requested Probation submit a memorandum explaining how Probation determined the loss amount.  Probation explained it relied on the government's charts.  Sealed Mem. ("Sealed Memorandum Regarding Martha") 2, ECF No. 993.  But the

charts the government provided do not match Probation's numbers. *See id.* at 1, 6-7. Moreover, the charts do not point to evidence to justify the numbers. *See id.* at 6-7. In sum, Probation's submissions lack a "sufficient indicia of reliability," and thus the Court holds that there is insufficient evidence to justify an award of restitution. *See Ollison*, 555 F.3d at 164 (quoting *Ayala*, 47 F.3d at 690).

## III.    Conclusion

The Court is troubled by not awarding restitution in this case. The purpose of the MVRA is to compensate victims for their losses. *Beydoun*, 469 F.3d at 108. And the Court suspects that both the Tribe and the United States have suffered losses at the hands of Defendants Isidro and Martha. But the law does not allow the Court to order restitution based on suspicions. *See* 18 U.S.C. § 3664(e). The MVRA is clear that the government must prove by a preponderance of the evidence that the convicted conduct caused an actual loss. *See id*; *Espinoza*, 2012 WL 1292513, at *2-3; *Beydoun*, 469 F.3d at 107. As explained above, the government has not proved its case for restitution against either Isidro or Martha, and thus the Court **DENIES** the government's claims for restitution.[9]

---

[9]    The Tribe and the United States may have civil law claims against Isidro and Martha. Because the Court's decision is based on the lack of evidence presented and is not a declaration that there was no loss, this Order shall not preclude any potential civil law claims. *See* 18 U.S.C. § 3664(j)(2) (assuming that criminal restitution is separate from a civil remedy by providing that "any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in [a civil proceeding]"); *Morse v. Comm'r*, 419 F.3d 829, 834 (8th Cir. 2005) (holding that criminal restitution order did not preclude the Commissioner of the Internal Revenue Service from litigating the defendant's civil tax liability). Additionally, this Order does not alter the Court's previous order that as a condition of supervised release both Isidro and Martha "shall pay all taxes, penalties, and interest due and owed to the Internal Revenue Service." Judgment in a Criminal Case 3, ECF No. 977; Judgment in a Criminal Case 3, ECF No. 979.

**SO ORDERED**.

**SIGNED** on this 5th day of June, 2012.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE